## Francis' Estate

*George M. Mason*, for executor.

WAITE, P. J., December 27, 1935.—Martha M. Francis died intestate on November 25, 1933. By her last will and testament pecuniary bequests amounting to $1,800 were made. On the audit of the executor's first and final

account, it was found that after payment of decedent's debts, fees and costs of administration there remained for distribution the sum of $1,398.64, being only sufficient to pay .777 percent of the amount of the specific bequests.

Item 5 of the will of said decedent provides as follows:

"I give and bequeath to Mrs. Mary Battles, of Girard, Pa., and to Mrs. Cora E. Greenslade, of Evanston, Illinois (daughters of Eric and Ellen Babbitt), the sum of two hundred ($200.00) dollars each, for their own personal use, absolute and forever."

In the order of distribution the sum of $155.40 was awarded to each of the above-named legatees. In making distribution, the executor learned that the said Mrs. Cora E. Greenslade had died on February 24, 1933, prior to the death of the testator. The legacy to the said legatee therefore lapsed and the amount thereof has reverted to the estate and is now before the court for distribution.

The will of the decedent also contains the following residuary clause:

"Item 7: I give and bequeath to Lillian Battles, Gladys Battles, Margery Battles and Leland Battles, Jr., children of L. A. and Mary Battles, all of Girard, Pa., and John B. Greenslade, of Evanston, Illinois, the balance of all my property, real, personal and mixed, that I may be possessed of at the time of my death, share and share alike, for their own personal use, absolute and forever."

The question now before the court is whether the amount of the lapsed legacy is to be distributed among all the pecuniary legatees to apply on the unpaid balances of their several legacies or to be paid to the residuary legatees.

This question would be without difficulty if the pecuniary legacies had been paid in full. There seems to be no Pennsylvania case deciding the question where there are insufficient funds for the payment in full of the preceding pecuniary bequests.

Section 15 (c) of the Wills Act of June 7, 1917, P. L. 403, provides as follows:

"Unless a contrary intention shall appear by the will, such real or personal estate, or interests therein, as shall be comprised or intended to be comprised in any devise or bequest in such will contained, which shall fail or be void by reason of the death of the devisee or legatee in the lifetime of the testator, or by reason of such devise or bequest being contrary to law, or otherwise incapable of taking effect, or which shall be revoked by the testator, shall be included in the residuary devise or bequest, if any, contained in such will. In any case where such devise or bequest which shall fail or be void, or shall be revoked as aforesaid, shall be contained in the residuary clause of such will, it shall pass to and be divided among the other residuary devisees or legatees, if any there be, in proportion to their respective interests in such residue."

A residuary clause is for the purpose of disposing by will of all of the property of the testator which he has not by his will otherwise disposed of. When there is no property remaining after payment of all other preceding obligations including bequests and devises, then there is no residue or remainder, for there is nothing to which a residuary clause is applicable.

Although this will does contain a residuary clause, there is in reality no residuary bequest or devise since there is nothing remaining in the estate upon which said clause can operate to produce a devise or bequest; hence, there are in fact no residuary legatees or devisees.

It is a cardinal rule of construction not to attempt to interpret language which is plain and clear and therefore needs no construction. But there are exceptions to all rules and this is a case where if necessary the exception rather than the rule should be applied. The manifest intention of the legislature was to prevent intestacy by providing that unpaid legacies should become a part of the residuary estate. We cannot believe that the legislature

intended that lapsed legacies should be distributed to residuary legatees in preference to unpaid pecuniary legacies. The probabilities are that an unusual situation such as has arisen in the instant case never entered the minds of the legislators.

In Endlich on Interpretation of Statutes, §295, it is said:

"Where the language of a statute, in its ordinary meaning and grammatical construction, leads to a manifest contradiction of the apparent purpose of the enactment, or to some inconvenience or absurdity, hardship or injustice, presumably not intended, a construction may be put upon it, which modifies the meaning of the words, and even the structure of the sentence. This is done, sometimes, by giving an unusual meaning to particular words; sometimes by altering their collocation; or by rejecting them altogether; or by interpolating other words; under the influence, no doubt, of an irresistible conviction, that the Legislature could not possibly have intended what its words signify, and that the modifications thus made are mere corrections of careless language, and really give the true intention. The ascertainment of the latter is the cardinal rule, or rather the end and object, of all construction; and where the real design of the Legislature in ordaining a statute, although it be not precisely expressed, is yet plainly perceivable, or ascertained with reasonable certainty, the language of the statute must be given such a construction as will carry that design into effect, even though, in so doing, the exact letter of the law be sacrificed, or though the construction be, indeed, contrary to the letter."

There being insufficient funds for the payment in full of the pecuniary legacies, we are, therefore, of the opinion that the amount of the lapsed legacy above referred to must be distributed to the pecuniary legatees pro rata as set forth in the order of distribution this day made, after deducting expenses paid by George M. Mason.